**BLANK ROME LLP**
Cheryl S. Chang (SBN 237098)
cheryl.chang@blankrome.com
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
Telephone:  424.239.3400
Facsimile:  424.239.3434

Attorney for Plaintiff
GEMINI DATA, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| GEMINI DATA, INC., a Delaware corporation, | Case No. |
| Plaintiff, | **PLAINTIFF GEMINI DATA, INC.'S COMPLAINT FOR** |
| v. | **1. FEDERAL TRADEMARK INFRINGEMENT (LANHAM ACT 15 U.S.C. § 1114(1)-(2));** |
| GOOGLE LLC, a Delaware limited liability company; and DOES 1-10, inclusive, | **2. FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (LANHAM ACT 15 U.S.C. § 1125);** |
| Defendants. | **3. TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (COMMON LAW);** |
| | **4. UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*);** |
| | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Gemini Data, Inc. ("Plaintiff" or "Gemini Data"), by and through its attorney, hereby alleges for its Complaint against Google LLC ("Google") and DOES 1-10 (together with Google, the "Defendants"), and states as follows:

## NATURE OF THE ACTION

1. Gemini Data was founded in 2013 with a mission to redefine how data from disparate sources is accessed and analyzed to rapidly create meaningful insights. As part of its unique mission, Gemini Data developed Artificial Intelligence ("AI") software that allows non-technical users to easily connect data sources and generate insights using natural language queries. As a small company, Gemini Data has spent more than a decade investing effort, time, and capital in developing a unique AI-enabled platform to help companies query, using natural language, both internal and external data to solve problems and gain business insights. To distinguish itself in the marketplace, Gemini Data branded its business and AI tools with the name "GEMINI."

2. Through years of developing, testing, and perfecting the "GEMINI" tools and expending significant resources in marketing and promoting its brand, Gemini Data today offers its suite of AI tools to companies globally.

3. To protect its significant investment in its growing business and to avoid potential confusion, Gemini Data promptly secured trademark and service mark registrations for its "GEMINI" brand with the U.S. Patent and Trademark Office ("USPTO"). Gemini Data has also been monitoring the marketplace in an effort to protect its exclusive right to use of the "GEMINI" brand.

4. Given the significant benefits afforded by its suite of products, the overall explosion of interest in AI tools such as Gemini Data's, and the compelling "GEMINI" branding developed by the company, Gemini Data began to experience traction in the expanding marketplace for tools that allow you to query massive data sets using natural language. Unfortunately, on February 8, 2024, without any authorization by Gemini Data, Google publicly announced a re-branding of its BARD

AI chatbot tool to "GEMINI." As a sophisticated company, Google undoubtedly conducted a trademark clearance search prior to publicly re-branding its entire line of AI products, and thus was unequivocally aware of Gemini Data's registered and exclusive rights to the "GEMINI" brand. Yet, Google made the calculated decision to bulldoze over Gemini Data's exclusive rights without hesitation.

5.     Google boldly attempted to secure a trademark registration for the "GEMINI" mark with the USPTO. However, as it should have expected, Google's application was *refused* based on, *inter alia*, a likelihood of confusion with Gemini Data's prior registered rights to the "GEMINI" marks in connection with AI tools. Yet, this still did not stop Google.

6.     On information and belief, Google switched gears with the understanding that it could no longer pretend to be unaware of Gemini Data's registered rights to the "GEMINI" brand. Shortly after the USPTO refusal was issued, Gemini Data was contacted by an "anonymous" entity regarding the possibility of acquiring rights to the "GEMINI" brand. After some back and forth, Gemini Data ultimately suspected that the anonymous entity was acting on behalf of Google and ceased contact with the other party.

7.     Despite Google's *actual* knowledge of Gemini Data's registered rights to the "GEMINI" mark, a refusal by the USPTO of Google's "GEMINI" application, and a refusal to sell Gemini Data's brand (purportedly to Google), Google has unapologetically continued to use the "GEMINI" brand to market and promote its AI tools.[1]

8.     While Gemini Data does not hold a monopoly over the development of generative AI tools, it does have *exclusive* rights to the "GEMINI" brand for AI tools. Gemini Data took all the steps to ensure it created a unique brand to identify its AI tools and to subsequently protect that brand. Yet, Google has unabashedly wielded its

---

[1] In an almost laughable example of Google's hubris, if you ask Google's Gemini application if it is aware that it is infringing upon the trademark of Gemini Data Inc., it responds "Yes" and that "[i]t's a developing situation." See **Exhibit A** attached hereto for a screenshot of the question and answer from August 21, 2024.

power to rob Gemini Data of its cultivated brand. Assuming a small company like Gemini Data would not be in a position to challenge a corporate giant wielding overwhelming power, Google continues to knowingly and willfully infringe on Gemini Data's rights, seemingly without remorse.

9.     Gemini Data now seeks relief from this Court for an injunction, monetary relief, and other relief for claims against Defendants for: (i) violations of federal law, 15 U.S.C. §§ 1114 and 1125, for trademark infringement, false designation of origin and unfair competition; (ii) violations of common law for trademark infringement and unfair competition; and (iii) violations of state law, Cal. Bus. & Prof. Code § 17200, *et seq.*, for unfair competition.

## **PARTIES**

10.     Plaintiff Gemini Data is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

11.     Defendant Google is, and at all relevant times was, a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in Mountain View, California.

12.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said Defendants by said fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and that Plaintiff's damages were proximately caused thereby. Plaintiff is informed and believes, and thereupon alleges, that at all relevant times herein, each of the DOE Defendants and the named Defendants were the agents and/or employees of one or more of the other Defendants, were acting within the course and scope of said agency and/or employment, and/or aided and abetted or are otherwise responsible or vicariously liable for one or more of the other

Defendants in committing the wrongful acts herein alleged.

13.     Plaintiff is informed and believes, and thereupon alleges, that Defendants, and each of them, conspired and agreed among themselves to do the acts complained of herein and were, in doing the acts complained of herein, acting pursuant to said conspiracy, and that each Defendant sued herein is jointly and severally responsible and liable to Plaintiff for the damages alleged herein.

14.     At all relevant times, Defendants transacted business within the Northern District of California.

## JURISDICTION AND VENUE

15.     The Court has exclusive subject matter jurisdiction over this case pursuant to 15 U.S.C. §§ 1114 and 1125 because claims herein arise out of federal trademark laws as codified in 15 U.S.C. §§ 1114 and 1125 (i.e., federal trademark infringement, false designation of origin and unfair competition). This Court also has supplemental jurisdiction over Gemini Data's claims arising under common law or the laws of the State of California pursuant to 28 U.S.C. § 1367(a) because the claims are so related to Gemini Data's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

16.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

17.     The Court has personal jurisdiction over each Defendant because in committing the acts alleged herein, Defendants purposefully availed themselves of California's jurisdiction by, among other things, regularly or intentionally doing business in California, and specifically within this District. The wrongful acts and their harmful effects have knowingly occurred in this District and arise directly out of or are sufficiently related to Defendants' contacts to California to exercise personal jurisdiction over each Defendant in accordance with due process.

**GENERAL ALLEGATIONS**

*A.    Plaintiff Gemini Data's Business, Product and Intellectual Property*

18.    Gemini Data was founded in 2013 with a mission to redefine how data from disparate sources is accessed and analyzed to create meaningful insights rapidly.

19.    Gemini Data has developed an AI-enabled platform to help companies query, using natural language, both internal and external data to solve problems and gain business insights.

20.    To distinguish itself in the marketplace, Gemini Data branded its business and AI tools under the name "GEMINI".

21.    Gemini Data spent years investing effort, time, and capital in developing this unique generative AI platform.

22.    Through years of developing, testing, and perfecting its AI tools, Gemini Data today offers its suite of AI tools to companies globally.

23.    To protect its significant investment in its growing business, Gemini Data promptly secured the following trademark and service mark registrations for its "GEMINI" brand with the USPTO (collectively, the "GEMINI Marks"):

| Mark | Reg. No. | Reg. Date | Class + Goods/Services |
|---|---|---|---|
| | 6389900 | 06/15/2021 | Class 09: *Recorded computer software for use in business enterprise big data collection, transmission, visualization, integration, analysis, management, and storage using machine learning and artificial intelligence, none of the foregoing for use in connection with energy production.* <br><br> Class 42: *Software as a service (SaaS) services featuring software for use in business enterprise big data collection, transmission, visualization, integration, analysis, management, and storage using machine learning and artificial intelligence, none of the foregoing for use in connection with energy production.* |

| Mark | Reg. No. | Reg. Date | Class + Goods/Services |
|---|---|---|---|
| | | | |
| | 6380947 | 06/08/2021 | Class 09: *Recorded computer software for use in business enterprise big data collection, transmission, visualization, integration, analysis, management, and storage using machine learning and artificial intelligence, none of the foregoing for use in connection with energy production.* <br><br> Class 42: *Software as a service (SaaS) services featuring software for use in business enterprise big data collection, transmission, visualization, integration, analysis, management, and storage using machine learning and artificial intelligence, none of the foregoing for use in connection with energy production.* |

See **Exhibit B** attached hereto for a true and correct copy of the U.S. Certificates of Registration for the GEMINI Marks. The GEMINI Marks are valid, subsisting and conclusive evidence of Gemini Data's exclusive right to use the GEMINI Marks in connection with AI tools and those goods and services within the zone of natural expansion.

24.    Gemini Data has expended large sums of money in developing, advertising and promoting its AI tools bearing the GEMINI Marks throughout the United States.

25.    Continuously and without interruption, beginning at least as early as June 1, 2011 (for the Class 09 goods) and July 17, 2019 (for the Class 42 services), Gemini Data has expended a great deal of time, effort, and capital in the promotion of the GEMINI Marks.

26.    As a direct result of these efforts, the relevant consuming public unequivocally recognizes and associates AI tools bearing the GEMINI Marks as connected with or offered by Gemini Data.

27.  The GEMINI Marks have valuable goodwill and consumer recognition associated with them and have come to symbolize the valuable goodwill and reputation of Gemini Data.

### Google's Infringing Conduct

28.  Notwithstanding Gemini Data's prior and well-established common law and federal statutory rights in the GEMINI Marks, and with at least constructive notice of federal registration under 15 U.S.C. § 1072, Defendants adopted and used the GEMINI Marks in connection with the promotion and marketing of AI tools.

29.  On February 8, 2024, without any authorization by Gemini Data, Google publicly announced the rebranding of its BARD AI chatbot to "GEMINI," which includes "GEMINI"-formative names for different versions of this tool (collectively, the "Google Products").[2]

30.  Per Google's website, located at https://gemini.google.com/, the Google Products provide consumers with access to Google's family of AI models to allow consumers to obtain help with writing, brainstorming, and learning.[3] The "GEMINI" mark is depicted not only in the domain URL but also throughout Google's website to identify the AI tools. Examples are set out below: [4]

---

[2] Liedtke, Michael, "Google rebrands its AI services as Gemini, launches new app and subscription service." The Associated Press, February 8, 2024, http://apnews.com/article/google-artificial-intelligence-gemini-smartphones-microsoft-9044770f1228af38d1e532cc640fb990.

[3] *See* https://gemini.google.com/

[4] https://workspace.google.com/solutions/ai/?utm_source=geminiforbusiness&utm_medium=et&utm_campaign=Gemini-page-crosslink&utm_content=forbusiness&utm_term=-

001579.00001/150455202v.2

**COMPLAINT**

**<u>Example 1</u>:**



**<u>Example 2</u>:**



**Bring your best ideas to life with Gemini for Google Workspace**

Gemini is the AI-powered assistant from Google, built right into Gmail, Docs, Sheets, and more, with enterprise-grade security and privacy.

Get started    Contact sales

To get Gemini for Google Workspace, you need an existing Workspace plan.

**<u>Example 3</u>:**

Organizations are using Gemini to move faster and be more productive

Uber

"Gemini for Google Workspace helps us save time on repetitive tasks, frees up developers for higher-value work, reduces our agency spending, and enhances employee retention."

**Dara Khosrowshahi**, CEO Uber

31.     As a sophisticated company, Google undoubtedly conducted a trademark clearance search prior to publicly re-branding its line of AI products. As such, upon information and belief, Google had actual knowledge of Gemini Data's registered and exclusive rights to the "GEMINI" brand prior to the decision to re-brand its AI tools.

32.    A few months prior to the public launch, on or around September 28, 2023, Google filed U.S. Trademark 98202646 with the USPTO for the mark "GEMINI" for "*Providing online non-downloadable software for use in large language models and artificial intelligence; providing online non-downloadable software using artificial intelligence for the production of human speech and text; providing online non-downloadable software for natural language processing, generation, understanding and analysis; providing online nondownloadable software for artificial intelligence and machine-learning based language and speech processing software; providing online non-downloadable software for creating generative models; providing online non-downloadable software for processing speech, text, sound, code, videos, images, and sound input; providing online non-downloadable software for generating speech, text, sound, code, videos, images, and sound output; research and development services in the field of artificial intelligence; Research, development and evaluation of large language models and data sets; research, design and development of computer programs and software; Providing online non-downloadable software for managing data sets and performing safety checks in the field of artificial intelligence; Providing online non-downloadable software for multi-modal artificial intelligence and machine-learning based language, text, sound, code, video, image, speech, and sound processing software; Providing temporary use of online non-downloadable software for facilitating multi-modal natural language, speech, text, sound, code, videos, images, and sound input; Research and development services in the field of multi-modal computer natural language processing, artificial intelligence, and machine learning; Providing temporary use of online non-downloadable software for an integrated development environment for large language models; Providing online non-downloadable software for use in the fields of artificial intelligence, machine learning, natural language generation, statistical learning, mathematical learning, supervised learning, and unsupervised learning; providing information from searchable indexes and databases*

*of information, including text, music, images, videos, software algorithms, mathematical equations, electronic documents, and databases; Application service provider featuring application programming interface (API) software*" in Class 42. Upon information and belief, the above application was based on an earlier foreign filing in Tonga.

33.    As Google should have expected, on May 9, 2024, the USPTO issued a refusal of Google's application based on, *inter alia*, a likelihood of confusion with the GEMINI Marks. Indeed, the USPTO refusal denied the application on the grounds that Gemini Data has prior, exclusive rights to use of the "GEMINI" mark in connection with AI tools – ***not Google***.

34.    Shortly after the USPTO refusal was issued, Gemini Data was contacted by an "anonymous" entity regarding the possibility of acquiring rights to the "GEMINI" brand. After some back and forth, Gemini Data ultimately ignored this offer and no further contact was made between the parties. Upon information and belief, especially given the events leading up to the contact from the "anonymous" entity, Gemini Data believes the inquiry was made on behalf of Google.

35.    Google's unauthorized and unlawful use of the GEMINI Marks in the context of AI tools squarely infringes upon Gemini Data's registered and exclusive rights to the GEMINI Marks.

36.    Gemini Data has secured exclusive, registered rights to the GEMINI Marks in connection with AI tools – ***not Google***.

37.    In addition, Gemini Data has been using the GEMINI Marks in connection with AI tools for ***many years*** prior to Google.

38.    Defendants knowingly and willfully continue to infringe upon Gemini Data's intellectual property rights with no remorse whatsoever and in reckless disregard of Gemini Data's intellectual property rights.

39.    Defendants' adoption and use of the GEMINI Marks in connection with AI tools is likely to cause confusion, mistake or deception as to the source, affiliation

or sponsorship of such tools. All such conduct by Defendants was and continues to be in bad faith, willful, deliberate and in knowing violation of the law.

40.    It is clear that Defendants will not stop such infringing and unlawful activities unless and until enjoined by the Court.

41.    Gemini Data has suffered and continues to suffer harm and damages as a result of the unlawful, deceptive, and unfair conduct by Defendants alleged herein.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement, 15 U.S.C. § 1114(1)-(2)

### (Against Google and Does 1-10)

42.    Gemini Data incorporates by reference the foregoing allegations as if fully restated herein.

43.    The GEMINI Marks are federally registered and entitled to protection under both federal and common law. Members of the consuming public have come to associate the GEMINI Marks with a single source – that is, Plaintiff.

44.    Defendants, without the informed consent of Plaintiff, have knowingly used and continue to use in commerce the "GEMINI" mark in connection with the advertising, marketing and promoting of its Google Products.

45.    Defendants' use in commerce of the "GEMINI" mark with the Google Products is likely to cause confusion, to cause mistake or to deceive consumers regarding the source of the AI tools being offered.

46.    Plaintiff's rights in the GEMINI Marks, which it has continuously used in commerce throughout the United States for years, predates Defendants' first use of the "GEMINI" mark.

47.    Defendants' unauthorized use in commerce of the "GEMINI" mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' AI tools, and is likely to cause consumers to believe, contrary to fact, that Defendants' AI tools are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

Defendants' conduct therefore constitutes trademark infringement in violation of the Lanham Act.

48.    Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the GEMINI Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

49.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

50.    Defendants' continued infringement of the GEMINI Marks is hampering Gemini Data's ability to distinguish itself as a premier provider of AI tools and services.

51.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages to its valuable GEMINI Marks, and other damages in an amount to be proven at trial.

52.    Defendants' infringement of the GEMINI Marks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the GEMINI Marks as well as an exceptional case within the meaning of 15 U.S.C. § 1117(b).

53.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## SECOND CAUSE OF ACTION

### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125

### (Against Google and Does 1-10)

54.    Gemini Data incorporates by reference the foregoing allegations as if fully restated herein.

55.     The GEMINI Marks are federally registered and entitled to protection under both federal and common law. Members of the consuming public have come to associate the GEMINI Marks with a single source – that is, Plaintiff.

56.     Defendants' unauthorized use in commerce of the "GEMINI" mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' AI tools, and is likely to cause consumers to believe, contrary to fact, that Defendants' AI tools are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

57.     Defendants' unauthorized use in commerce of the "GEMINI" mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

58.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

59.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

61.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**THIRD CAUSE OF ACTION**

**California Common Law Trademark Infringement and Unfair Competition Law**

**(Against Google and Does 1-10)**

62.    Gemini Data incorporates by reference the foregoing allegations as if fully restated herein.

63.    The GEMINI Marks are federally registered and entitled to protection under both federal and common law. Members of the consuming public have come to associate the GEMINI Marks with a single source – that is, Plaintiff.

64.    Gemini Data has continuously used its GEMINI Marks to identify its AI tools in California and elsewhere, and to distinguish them from goods of a different origin. As such, Gemini Data has common law rights to the GEMINI Marks.

65.    Defendants' acts described above constitute trademark infringement and unfair competition under the common laws of the United States, including California.

66.    As a direct and proximate result, Gemini Data has suffered injury and harm and will continue to suffer such harm, including money damages, the amount of which Gemini Data will prove at trial.

67.    Gemini Data has no adequate remedy at law. Thus, said activities of Defendants have caused, if not enjoined, will continue to cause irreparable harm and damage to the rights of Gemini Data in its GEMINI Marks and to its business reputation and good will.

68.    Upon information and belief, Defendants have engaged in its unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Gemini Data to punitive damages in an amount to be determined at trial.

# FOURTH CAUSE OF ACTION

## Unfair Competition Law - California Bus. & Prof. Code §§ 17200, *et seq.*

### (Against Google and Does 1-10)

69.     Gemini Data incorporates by reference the foregoing allegations as if fully restated herein.

70.     As alleged above, Defendant has engaged in unlawful, unfair, or fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200 et seq.

71.     Specifically, upon information and belief, Defendants have engaged in unlawful, unfair, or fraudulent business acts and practices by purposefully using the "GEMINI" mark in marketing and promoting its AI tools despite its actual knowledge of Plaintiff's exclusive rights to the GEMINI Marks.

72.     As a direct, proximate, and foreseeable result of the wrongful conduct of Defendant, Plaintiff has been damaged and is entitled to relief, including full restitution and/or disgorgement of any funds and benefits that may have been and/or will be obtained by Defendants as a result of such unfair business acts and practices, including any other legal or equitable relief the Court deems proper, including a constructive trust, if necessary.

73.     While Gemini Data has suffered damages and continues to suffer damages as a result of Defendants' conduct, monetary damages alone will not afford Gemini Data adequate relief. As such, Gemini Data has no adequate remedy at law that will compensate for the continued and irreparable harm it has suffered and will continue to suffer if Defendants' conduct is allowed to continue.

74.     Gemini Data is informed and believes and thereupon alleges that unless enjoined by this Court, Defendants, and any person or entity complicit or participating with them, and each of them, will continue to engage in unfair competition and unlawful conduct. Therefore, Gemini Data seeks injunctive relief described herein.

1    75.    Gemini Data is also informed and believes and thereupon alleges that use

2  of Plaintiff's trademarks has conferred benefits on Defendants, for which Plaintiff

3  seeks restitution. Defendants have profited by reason of their acts of unfair

4  competition and unlawful acts as alleged herein. Therefore, Gemini Data also seeks an

5  order requiring the Defendants to disgorge all of their ill-gotten gains.

6                                **PRAYER FOR RELIEF**

7    **WHEREFORE**, Plaintiff Gemini Data, Inc. prays for judgment against

8  Defendant Google, LLC and DOES 1-10, as follows:

9    a.   Judgment be entered that all Defendants have willfully: (i) infringed the

10  GEMINI Marks in violation of 15 U.S.C. § 1114; (ii) used false designations of origin

11  and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (iii) engaged

12  in trademark infringement and unfair competition in violation of California common

13  law; and (iv) engaged in unfair competition in violation of California Bus. & Prof.

14  Code § 17200, *et seq*.

15    b.    Entry of an order permanently enjoining Defendants, their employees,

16  agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns,

17  and all of those in active concert and participation with any of the foregoing persons

18  from:

19        i.    distributing, providing, selling, marketing, advertising, promoting,

20             using or authorizing any third party to distribute, provide, sell, market,

21             advertise, promote, or use the "GEMINI" mark, or any other mark that

22             is confusingly similar to Plaintiff's GEMINI Marks, in connection

23             with AI related products and services;

24        ii.   engaging in any activity that infringes Plaintiff's rights in its GEMINI

25             Marks;

26        iii.  engaging in any activity constituting unfair competition with Plaintiff;

27        iv.   engaging in any activity that is likely to dilute the distinctiveness of

28             Plaintiff's GEMINI Marks;

v.     making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' services or goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

vi.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating "GEMINI," or any other mark that infringes or is likely to be confused with Plaintiff's GEMINI Marks, or any services of Plaintiff, or Plaintiff as their source; and

vii.    assisting, inducing, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (vi) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi) above.

c.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any services or goods sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's services or goods.

d.    Defendants be directed to file with the Court and serve on Gemini Data, within ten (10) days after entry of a final injunction, a report in writing under oath

setting forth in detail the manner and form in which Defendants have complied with the injunction.

e.  Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

f.  Awarding Plaintiff statutory damages for the infringing domain name pursuant to Section 35(d) of the Lanham Act (15 U.S.C. § 1117(d)).

g.  Directing that Defendants account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

h.  Directing that Defendants provide an accounting of all profits realized by their wrongful acts in violation of the California Bus. & Prof. Code § 17200, *et seq.* and disgorge to Plaintiff the same.

i.  Awarding Plaintiff punitive and exemplary damages, pursuant to the Third Cause of Action, as the Court finds appropriate to deter any future willful infringement.

j.  Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

k.  Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

l.  Awarding such other and further relief as the Court deems just and proper.

DATED:  September 11, 2024          **BLANK ROME LLP**

/s/ Cheryl S. Chang
Cheryl S. Chang
Attorneys for Plaintiff,
GEMINI DATA, INC.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. Rule 38, Plaintiff hereby demands a jury trial as to all issues so triable in this action.


DATED:  September 11, 2024          **BLANK ROME LLP**

                                    By:   */s/ Cheryl S. Chang*
                                          Cheryl S. Chang
                                          Attorneys for Plaintiff
                                          GEMINI DATA, INC.